

2015 JUL -6 AM 9: 51

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In re the Detention of: | ) | No. 72003-1-I |
| | ) | |
| H.N., | ) | DIVISION ONE |
| | ) | |
| Appellant. | ) | |
| | ) | PUBLISHED |
| | ) | |
| | ) | FILED: July 6, 2015 |
| | ) | |

Cox, J. — H.N. appeals the order committing her to involuntary treatment. The trial court did not abuse its discretion when it admitted as substantive evidence e-mailed screenshots of text messages that a medical expert used as part of her opinion testimony. The evidence was sufficient to support the trial court's finding of fact that H.N. posed a likelihood of serious harm to herself. The allegedly improper closing argument of the prosecutor did not violate H.N.'s right to due process. We affirm.

The material facts are largely undisputed. H.N. is a college student who was less than 21 years of age at the time of the events leading to this case. She worked at part time jobs, and she had two roommates who worked with her at one of her jobs.

After midnight on a night in May 2014, H.N.'s two roommates returned home to discover her unconscious on the floor and lying in a pool of her own

vomit. Nearby there was an empty bottle of wine, an empty bottle of Nyquil, and a partially empty bottle of vodka. H.N. briefly awoke but then passed out again. One roommate called 911, and medics responded to the scene.

Designated mental health professionals involuntarily detained H.N. for treatment on May 3, 2014. Thereafter, the State petitioned for up to 14 days of additional inpatient treatment, pursuant to the involuntary treatment act, RCW 71.05.

On May 7, 2014, the court conducted a hearing on the petition. At the hearing, the State presented the testimony of H.N.'s two roommates, H.N.'s best friend, S.T., and a psychologist who evaluated H.N. at the hospital.

The psychologist testified as an expert. Part of her testimony was based on what purported to be e-mailed screenshots of text messages between H.N. and her boyfriend, "A." These messages were exchanged on the night her roommates found her unconscious on the floor, lying in a pool of her vomit. The psychologist read several of these text messages into the record. Over H.N.'s objection on the basis of lack of foundation, the court admitted this evidence.

H.N. testified on her own behalf but presented no other evidence. She presented no evidence to challenge the authenticity of the e-mailed screenshots of the text messages.

In closing argument, the prosecutor argued, "[W]hen we kind of peel back the layers and we point out all of the people who are perceived to care greatly about [H.N.], versus who appeared besides [H.N.] herself to advocate for her

2

release, I think that the evidence certainly weighs in favor of keeping her in the hospital."[1] Defense counsel did not object.

After the hearing, the trial court found that H.N. suffered from a mental disorder and presented a likelihood of serious harm to herself. The court entered an order committing H.N. for involuntary treatment for a period of 14 days. The court later entered supplemental findings of fact and conclusions of law.

H.N. appeals.

## MOOTNESS

A threshold question is whether this case is now moot because the 14-day period of involuntary treatment has passed and this court can no longer give effective relief. The issues before us are of continuing and substantial public interest. Moreover, the involuntary commitment order may have future collateral consequences for H.N. Accordingly, we reach the issues despite this case being technically moot.

"A case is moot if a court can no longer provide effective relief."[2] As a general rule, an appellate court will not review a moot case.[3] But this court may review a moot case if it presents issues of continuing and substantial public interest.[4] In deciding whether a case presents issues of continuing and substantial public interest three factors are determinative: "'(1) whether the issue

---

[1] Report of Proceedings (May 7, 2014) at 101.

[2] Orwick v. City of Seattle, 103 Wn.2d 249, 253, 692 P.2d 793 (1984).

[3] Id.

[4] Westerman v. Cary, 125 Wn.2d 277, 286, 892 P.2d 1067 (1994).

is of a public or private nature; (2) whether an authoritative determination is desirable to provide future guidance to public officers; and (3) whether the issue is likely to recur.'"[5] A fourth factor that "may also play a role" is "'the level of genuine adverseness and the quality of advocacy of the issues.'"[6] Finally, the court may consider "'the likelihood that the issue will escape review because the facts of the controversy are short-lived.'"[7]

"[A]n involuntary commitment order has collateral consequences for future commitment determinations."[8]

Here, there is an important evidentiary issue of first impression in this state—whether the court abused its discretion in admitting e-mailed screenshots of text messages. These text messages served as a primary basis for expert testimony regarding involuntary treatment of an individual. This is an issue of a public nature, an authoritative determination is necessary for the guidance of trial courts, and the issue is likely to recur. And the issue is likely to evade future review due to the 14-day limit of involuntary treatment under the circumstances of cases like this.

---

[5] Id. (quoting Hart v. Dep't of Soc. & Health Servs., 111 Wn.2d 445, 448, 759 P.2d 1206 (1988).

[6] Id. (quoting Hart, 111 Wn.2d at 448).

[7] Id. at 286-87 (quoting City of Seattle v. State, 100 Wn.2d 232, 250, 668 P.2d 1266 (1983)).

[8] In re Det. of M.K., 168 Wn. App. 621, 622, 279 P.3d 897 (2012).

Moreover, the issue of commitment will likely have collateral consequences for H.N. should there be future questions regarding her mental health.

For these reasons, we reach the issues presented by this technically moot case.

## EVIDENTIARY RULING

H.N. argues that the trial court abused its discretion when it admitted as substantive evidence e-mailed screenshots of text messages that the State's expert witness used during her testimony. Because this evidence was properly authenticated pursuant to ER 901(b), we disagree.

"Authentication is a threshold requirement designed to assure that evidence is what it purports to be."[9] Under ER 901(a), "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

Because the proponent must make only a prima facie showing of authenticity for purposes of establishing admissibility, ER 901 is met "if the proponent shows enough proof for a reasonable fact finder to find in favor of authenticity."[10] "'[T]he proponent of offered evidence need not rule out all

---

[9] State v. Payne, 117 Wn. App. 99, 106, 69 P.3d 889 (2003).

[10] Id. at 108 (citing State v. Danielson, 37 Wn. App. 469, 471, 681 P.2d 260 (1984)).

5

possibilities inconsistent with authenticity or conclusively prove that evidence is what it purports to be . . . .'"[11]

"Because under ER 104 authenticity is a preliminary determination, the court may consider evidence that might otherwise be objectionable under other rules."[12] "A trial court may, therefore, rely upon such information as lay opinions, hearsay, or the proffered evidence itself in making its determination."[13] "Such information must be reliable, but need not be admissible."[14]

"In making this preliminary determination, the court considers only the evidence offered by the proponent and disregards any contrary evidence offered by the opponent."[15] "Once a prima facie showing has been made, the evidence is admissible under ER 901."[16] The opponent is then free to object on the basis of any other rules that may bar the evidence or offer contradictory evidence challenging authenticity.[17] If such contradictory evidence is offered, the authenticity of the proponent's evidence is ultimately judged by the trier of fact.[18]

---

[11] State v. Andrews, 172 Wn. App. 703, 708, 293 P.3d 1203 (quoting State v. Thompson, 777 N.W.2d 617, 624 (N.D. 2010)), review denied, 177 Wn.2d 1014 (2013).

[12] Rice v. Offshore Sys., Inc., 167 Wn. App. 77, 86, 272 P.3d 865 (2012).

[13] State v. Williams, 136 Wn. App. 486, 500, 150 P.3d 111 (2007).

[14] Id.

[15] Rice, 167 Wn. App. at 86.

[16] Id.

[17] Id.

[18] 5C KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 901.4, 288-89 (5th ed. 2007).

ER 901(b) provides examples of authentication conforming with the requirements of the rule. These examples are "[b]y way of illustration only, and not by way of limitation."[19] They include the following:

> (4) *Distinctive Characteristics and the Like.* Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.
>
> . . .
>
> (10) *Electronic Mail (E-mail).* Testimony by a person with knowledge that (i) the email purports to be authored or created by the particular sender or the sender's agent; (ii) the email purports to be sent from an email address associated with the particular sender or the sender's agent; and (iii) the appearance, contents, substance, internal patterns, or other distinctive characteristics of the email, taken in conjunction with the circumstances, are sufficient to support a finding that the email in question is what the proponent claims.[20]

The current version of ER 901(b) does not specifically address text messages. Nevertheless, these illustrative examples provide proper bases for the trial court's determination in this case.

A trial court's admission of evidence is reviewed for abuse of discretion.[21] An abuse of discretion occurs when a trial court's decision is manifestly unreasonable or based on untenable grounds or reasons.[22]

---

[19] ER 901(b).

[20] Id. at (4), (10).

[21] State v. Magers, 164 Wn.2d 174, 181, 189 P.3d 126 (2008).

[22] Id.

This court recently considered authentication of text messages in State v. Bradford.[23] There, Jonathan Bradford was convicted of several offenses, including felony stalking of his ex-girlfriend.[24] Among the evidence admitted at trial were text messages that Bradford had sent to his ex-girlfriend and her friend.[25] The text messages sent to the ex-girlfriend were introduced through the testimony of a police officer who read to the jury quotations from the text messages from police reports.[26] Other text messages, sent to the friend, were admitted through a 12-page condensed version of a much longer report itemizing each text message that was retrieved from a "phone dump" report of the friend's cellular telephone.[27] Bradford appealed, claiming that the trial court erroneously admitted the evidence of the text messages. He claimed that the State failed to show that he sent the messages, relying on ER 901(a).[28]

This court rejected Bradford's arguments. It concluded that there was sufficient evidence to support a finding that Bradford wrote and sent the text messages that were read to the jury and contained in the report.[29]

---

[23] 175 Wn. App. 912, 308 P.3d 736 (2013), review denied, 179 Wn.2d 1010 (2014).

[24] Id. at 915.

[25] Id. at 928.

[26] Id. at 918 n.1, 928.

[27] Id. at 919.

[28] Id. at 927.

[29] Id. at 928-29.

First, the court noted that Bradford's actions showed his "desperate desire" to communicate with his ex-girlfriend.[30] And it stated that "[i]t was consistent with this obsessive behavior that [Bradford] would also send text messages to [the friend] as part of his efforts to contact [his ex-girlfriend]."[31]

Second, the court stated that "the content of the text messages themselves indicated that Bradford was the individual who sent them."[32] For example, the text messages repeatedly mentioned his ex-girlfriend's name. Further, the threats contained in the text messages "were consistent with Bradford's previous threats made in 2010."[33] Additionally, other texts referenced the name of the restaurant in which Bradford had seen his ex-girlfriend.[34]

Third, the court noted that two of the text messages threatened to cause an explosion.[35] And shortly after these messages were sent, the ex-girlfriend received a suspicious package from Bradford.[36]

Fourth, the court stated, "Also pertinent was the fact that, between January 22 and May 23, 2011, Bradford was in jail and, therefore, unable to send text messages or e-mails. During this same time period, [the friend] did not

---

[30] Id. at 929.

[31] Id.

[32] Id.

[33] Id.

[34] Id. at 930.

[35] Id. at 929.

[36] Id.

receive any offensive text messages."[37] Once Bradford was released from jail, the friend began to receive offensive text messages again.[38]

Finally, the court noted that the ex-girlfriend and her friend testified to their belief that the text messages were from Bradford.[39]

As an initial matter, we note that the current version of ER 901(b) that we quoted earlier in this opinion was not before the Bradford court. Specifically, ER 901(b)(10) now specifically refers to e-mails, whereas the earlier version did not.[40] The trial court specifically relied on the current version of this rule for its ruling.

The evidentiary ruling arose during Dr. Cynthia Mason's testimony. She was qualified as an expert medical witness on behalf of the State. She testified that she considered the e-mailed screenshots of text messages as an important basis for her opinions and that experts in her field generally rely upon such evidence. Significantly, she also discussed these e-mailed screenshots of text messages with H.N. when she evaluated her.

Over H.N.'s objection, based on lack of foundation, the trial court admitted the e-mailed screenshots of the text messages that Dr. Mason read into the record.

---

[37] Id. at 929-30.

[38] Id. at 930.

[39] Id.

[40] See former ER 901(b)(10) (1979) ("*Methods Provided by Statute or Rule.* Any method of authentication or identification provided by statute or court rule.").

Dr. Mason believed the text messages were sent to H.N.'s boyfriend who lived out of state. She testified that the first message was sent at 11:00 p.m. and was initiated by H.N. It stated, "I'm about to do something really stupid."[41] H.N. then wrote, "I need you. I need someone."[42] The next message stated, "I've got two bottles of wine and a bottle of 80 proof vodka. It's going down my throat with some prescription meds."[43] When asked what happened, H.N. responded, "I'm sh*t. That's what happened."[44]

Dr. Mason continued to summarize the conversation:

> And he presses and—and—asking her. And he's asking her what was the problem. At 11:08 p.m. she writes, quote, I'm almost done with one bottle, end quote. And he's asking her to talk to her and she responded—or he responded at 11:08 p.m., quote, you're not going to kill yourself for someone who isn't worth it, end quote.
>
> At 11:09 p.m. she wrote back, quote, I'm not killing myself for that reason, end quote. And then she texts again, quote, I'm killing myself because I'm tired, end quote. And she's going on about a relationship that it appears has—has failed. And he's pleading with her to keep the bottles and the medicine away and just talk to him.
>
> And she responds at 11:11 p.m., quote, I miss [H.N.'s ex-boyfriend], end quote. And he's telling her to relax and talk to her and—and stop drinking. He's pleading with her. And at 11:15 p.m. she writes, quote, don't tell [S.]. And I believe that that's [S.T.] who is present in court today, about what's happening. And then he responded back by saying, at 11:16, I already told her . . . .
>
> At 11:16 she responded, quote, I know, she called me, end quote. And then he's pleading with her to relax and not kill herself. At 11:17 she responds, quote, one bottle is gone, [A.]. I don't know

---

[41] Report of Proceedings (May 7, 2014) at 53.

[42] Id.

[43] Id.

[44] Id.

11

what to do, end quote. And he's trying to reassure her that everything will be all right.

At 11:19 she writes, quote, I can't. He responds at 11:19, I won't let you die. I'll take care of you. I love you, remember? At 11:20 she responds, I can't. At 11:20 she responds, quote, in a minute I won't be able to text, end quote. And he's pleading with her and saying why, why, why? At 11:21 she's responding, I'm dizzy, end quote. At 11:22 she's responding, I need you, end quote.

At 11:23 she responds, quote, please don't tell [S.]. There is nothing she can do, end quote. He's saying I won't be able to live with myself if something happens to you. And then he informs her that somebody is coming over for her to take care of her. And she responds at 11:27, who? And then she—he's saying that a friend is going to come see her. At 11:29 she types, I can't see any more, I'm sorry. And he's responding that this person that he's sending over is her friend. And she pleads with him at 11:33, no, tell him not to come. I don't want him.

At 11:36 she types, I want to see my mom, who's deceased. And at 11:36 she types I want to see [her ex-boyfriend], who's again deceased. He's saying that your dying doesn't mean that you'll see him. At 11:39 she types after life. Again, he's pleading with her not to kill herself.

She types some—couple times at 11:54 and 11:56 some faces, a bike and five hand gestures, followed by I hurt.[45]

Dr. Mason testified that there was no correspondence again until 1:12 a.m., when she wrote "I think I'm at the hospital now."[46]

When the prosecutor asked if the timeline corresponded with the timing of this incident, Dr. Mason answered affirmatively.

The court overruled H.N.'s objection to this evidence and stated:

I am going to accept [the e-mailed screenshots of the text messages] as substantive evidence. If you take a look at ER

---

[45] Id. at 53-55.

[46] Id. at 55.

> 901(b)(10), I can look to the appearance, the content, the substance, the internal patterns or other general distinctive characteristics in order to authenticate these documents.
>
> And given the date and time, her name, her phone number, and the content of these text messages, that provides this Court with circumstantial evidence that these in fact were statements made by [H.N.], and I will accept them as such.[47]

This ruling was a proper exercise of discretion.

First, it is significant that Dr. Mason confronted H.N. with the e-mailed screenshots of the text messages during the evaluation that preceded the court hearing. H.N. acknowledged sending the text messages but claimed she did not recall to whom. Nevertheless, this interaction between the two evidences that the e-mailed screenshots of text messages admitted as substantive evidence were what they purported to be—statements by H.N. during the incident that gave rise to her involuntary commitment for treatment.

Second, the identifying information at the top of the text messages indicates that H.N. was the sender. Dr. Mason testified that the text messages listed the sender's phone number. She further testified that that the sender's phone number matched the contact information in H.N.'s medical chart. She also testified that H.N.'s full name was identified and displayed as the sender of the text messages.

Third, the content of the text messages themselves also suggests that H.N. was the sender. The messages consistently reference names of people in H.N.'s life.

---

[47] Id. at 58-59.

Fourth, the text messages are consistent with certain events that happened in H.N.'s life. For example, one text messages states, "I want to see my mom" and another states "I want to see [H.N.'s ex-boyfriend]."[48] Both H.N.'s mom and her ex-boyfriend are deceased. Additionally, another message states, "I've got two bottles of wine and a bottle of 80 proof vodka. It's going down my throat with some prescription meds."[49] This is consistent with the fact that wine and vodka bottles were found near H.N.'s unconscious body.

Finally, the timing of the text messages is consistent with H.N.'s hospitalization on the night of the incident. The date of the screenshots indicate that they were taken on May 4, 2014. H.N. was detained on May 3, 2014. Further, the text messages themselves are time-stamped. The text message conversation starts at around 11:00 p.m. and stops at around 12:00 a.m. According to their testimony, H.N.'s roommates found H.N. unconscious around 12:00 a.m. to 12:30 a.m. They called 911 and paramedics took H.N. to the hospital. The text messages resume at 1:12 a.m. with one that states, "I think I'm at the hospital now."[50]

In sum, the requirements of ER 901(b)(10) are satisfied by analogy. The record establishes that the e-mailed screenshots of text messages were authored by H.N. Likewise, they were sent from the cell number associated with H.N. Finally, the distinctive characteristics of the messages, taken in conjunction

---

[48] Id. at 55; Supplemental Documents Requested by the Court.

[49] Id. at 53.

[50] Id. at 55.

14

with the circumstances are sufficient to support authentication. For these reasons, we conclude that the trial court correctly decided that the State's prima facie showing was sufficient to admit this evidence.

H.N. attempts to distinguish this case from Bradford in several ways. None of her arguments are persuasive.

First, H.N. points out that, in contrast to Bradford, the document in this case was not produced as part of a report generated by the recipient's cell service provider. This is true. But that is immaterial.

The evidence in this case shows that H.N. acknowledged sending these text messages. Moreover, for the reasons the trial court stated in its ruling, there was sufficient evidence to authenticate them.

In any event, the fact that the text messages in Bradford were produced as part of a report was not material to the court's analysis. Rather, the court relied on the circumstantial evidence we discussed earlier in this opinion to conclude that the text messages were properly authenticated.

Second, H.N. argues that "while in Bradford the sender was unverified, here both the sender and the recipient remain unverified."[51] But this overlooks that the sender, H.N. was verified. She acknowledged sending the text messages. Further, Dr. Mason testified that the phone number in the e-mailed screenshots of the text messages was the same as that in H.N.'s medical records. This, as well as the other evidence we discussed previously, was

---

[51] Brief of Appellant at 11.

15

sufficient to verify that H.N. was the sender. The fact that the recipient was not also verified does not appear to be a requirement to authenticate this evidence.

In any event, the information concerning the identity of the recipient was not material to the reasoning in Bradford. While knowledge of the recipient might be helpful to establishing authentication, H.N. fails to point to any authority indicating that such evidence is required.

H.N.'s arguments about State v. Danielson fail for the same reason.[52] In that case, an officer testified that he had received a telephone call and spoken with an individual who identified himself as the defendant.[53] H.N. contrasts Danielson and asserts that in this case, "No individual testified that he had received the text messages, or even the emailed screen shots of the text messages. Without this testimony, the messages could not be properly authenticated."[54] But again, H.N. fails to provide any authority to support this assertion. Thus, we reject it.

H.N. argues that without testimony from a witness who could testify that he had received the messages, "[T]here was [no] way to verify how the emailed documents had been actually created or whether they had been altered."[55]

It is unclear whether this argument is directed to the screenshots of the text messages or to the e-mail that transmitted them. As we have consistently

---

[52] Appellant's Reply Brief at 1-2 (citing State v. Danielson, 37 Wn. App. 469, 681 P.2d 260 (1984)).

[53] Danielson, 37 Wn. App. at 472.

[54] Appellant's Reply Brief at 2.

[55] Id. at 3.

stated in this opinion, the document from which Dr. Mason quoted at the hearing was composed of e-mailed screenshots of text messages.

If this argument is directed to the screenshots of the text messages contained in the e-mail, we have already considered and rejected the challenges in our prior discussion in this opinion. If, however, this argument is directed to the e-mails themselves, we conclude that H.N. did not preserve this argument. H.N. did not argue in the trial court that the e-mails themselves, as distinct from the screenshots of text messages within the e-mail, were not authenticated. Rather, the focus below was limited to the text messages, and the trial court's ruling was similarly focused. Likewise, on appeal, the briefing does not develop this alternative. Accordingly, we do not further address it.

Finally, H.N. argues that "there was no evidence presented about when the text messages had been obtained."[56] But the screenshots are dated May 4, 2014. H.N. also asserts, "The fact that the messages appeared to be time stamped was not sufficient for authentication because the recipient of the messages did not testify and the evidence did not come directly from the cell phone."[57] But she fails to provide any authority to support this assertion. Further, the time stamps provide circumstantial evidence of authentication. Thus, this is not persuasive.

---

[56] Brief of Appellant at 12.

[57] Id.

**SUFFICIENCY OF THE EVIDENCE**

H.N. next argues that the State presented insufficient evidence to support the trial court's finding that she presented a likelihood of serious harm to herself. We disagree.

To commit a person for involuntary treatment, the State must show by a preponderance of the evidence that the person, as a result of a mental disorder, presents a likelihood of serious harm, or is gravely disabled.[58] "Likelihood of serious harm" to oneself means a "substantial risk that . . . [p]hysical harm will be inflicted by a person upon his or her own person, as evidenced by threats or attempts to commit suicide or inflict physical harm on oneself."[59]

"[W]here the trial court has weighed the evidence, appellate review is limited to determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment."[60] Substantial evidence is the quantum of evidence sufficient to persuade a fair-minded person of the truth of the declared premise.[61]

Here, sufficient evidence supports the finding that H.N. presented a likelihood of serious harm to herself. Supplemental finding of fact 7 sets forth the evidence that the court relied on in making this determination:

---

[58] RCW 71.05.240(3).

[59] RCW 71.05.020(25)(a)(i).

[60] In re Det. of LaBelle, 107 Wn.2d 196, 209, 728 P.2d 138 (1986).

[61] In re Det. of A.S., 91 Wn. App. 146, 162, 955 P.2d 836 (1998), aff'd, 138 Wn.2d 898, 982 P.2d 1156 (1999).

The Court finds that as a result of [H.N.'s] mental disorder, she presents a substantial risk of harm to herself, as defined under RCW 71.05.020(25)(a)(i). This is based upon the testimony of the Petitioner's witnesses, who testified as to how they came home to discover [H.N.] passed out in her own vomit near the doorway of their shared apartment. They were concerned that she was dead and immediately called for help after being unable to successfully rouse her. Near [H.N.'s] unconscious body, they found an empty bottle of wine, an almost empty bottle of vodka, and an empty bottle of Nyquil, which the roommates testified nobody other than [H.N.] could have consumed. Those bottles all had been mostly full earlier that day. In finding that the Petitioner's witnesses' version of the events is more credible than [H.N.'s] version, the Court notes that the text messages between [H.N.] and "[A.]" are extremely important to the analysis and undermine [H.N.'s] version of the events. The Court notes [that H.N.] is high functioning. However, before she had consumed all of the alcohol and become inebriated, she was already texting "[A.]" indicating that she had alcohol and medication in her possession that she was going to begin consuming for the purpose of killing herself. The Court finds this is not the action of someone who is too drunk to know what they are doing, which is contrary to [H.N.'s] testimony that she was too drunk to remember what she was texting. The Court finds the specificity of [H.N.'s] text message comments demonstrates that [H.N.] was very aware of what she was saying and what she intended to do. The Court finds that in light of all the evidence, this was a verifiable and true suicide attempt, which had been planned out and implemented. The timing of the events also weighs in the Petitioner's favor. The testimony well establishes that May is a tough time of year for [H.N.] and that leading up to the suicide attempt, the roommates . . . had noticed an increased avoidance, withdrawal, increased sleep patterns, [H.N.] skipping classes, and not wanting to be with friends.[62]

Substantial evidence in the record supports this finding of fact. Specifically, it is supported by the testimony of H.N.'s two roommates and Dr. Mason who testified to the content of the text messages. The trial court expressly found the testimony of these witnesses credible and H.N.'s testimony not credible. This court does not review credibility determinations.

---

[62] Clerk's Papers at 31.

The e-mailed screenshots of text messages and the court's credibility determinations support its finding that this was a "verifiable and true suicide attempt." Several of the text messages clearly indicate that H.N. was attempting suicide. And this recent suicide attempt is evidence that there is a substantial risk that H.N. will inflict physical harm upon her own person. In sum, substantial evidence supports the finding that H.N. presents a likelihood of serious harm to herself.

Moreover, even if the e-mailed screenshots of text messages, revealing her recent suicide attempt, were improperly considered as substantive evidence, the testimony of H.N.'s roommates and H.N.'s best friend also supports the challenged finding.

Their testimony shows that H.N. recently inflicted physical harm on herself at times other than the suicide attempt. One of H.N.'s roommates testified that H.N. had recently cut herself and admitted hurting herself on purpose. H.N.'s best friend testified that she had recently seen injuries on H.N., including cuts on H.N.'s ankles and a burn on her wrist.

Their testimony also shows that H.N. continued to present a risk of harm to herself. One roommate testified that she was worried about H.N. hurting herself if she were to go back to the apartment in her current condition. H.N.'s second roommate also testified that she did not think she could keep H.N. safe in her current condition. H.N.'s best friend expressed similar concerns.

In short, the evidence is sufficient to support the challenged finding.

H.N. argues that "[w]hile the statute allows for the consideration of past suicide attempts, it requires that the State show physical harm *will* be inflicted, not simply that [H.N.] has inflicted harm upon herself in the past."[63] But the statute only requires that the State show a "substantial risk" that physical harm will be inflicted. Further, the statute expressly states that "likelihood of serious harm" means a substantial risk that "[p]hysical harm will be inflicted by a person upon his or her own person, **as evidenced by threats or attempts to commit suicide or inflict physical harm on oneself.**"[64] Thus, evidence of a past suicide attempt is evidence of a substantial risk that physical harm will be inflicted. Accordingly, this argument is not persuasive.

## DUE PROCESS

Finally, H.N. argues that the prosecutor improperly commented on her failure to present evidence and that this violated her right to due process. We conclude that any error does not warrant reversal.

Prosecutorial misconduct is grounds for reversal if the prosecutor's conduct was both improper and prejudicial.[65] A reviewing court determines the effect of a prosecutor's improper conduct by examining that conduct in the full trial context, including the evidence presented, the context of the total argument, the issues in the case, and the evidence addressed in the argument.[66]

---

[63] Brief of Appellant at 19-20.

[64] RCW 71.05.020(25)(a)(i) (emphasis added).

[65] State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551 (2011).

[66] Id.

21

In the absence of evidence to the contrary, we presume the judge in a bench trial does not consider improper matters or inadmissible evidence in rendering a verdict.[67]

Here, H.N. argues that the prosecutor committed misconduct when he made the following statement during closing argument:

> We've heard a lot of testimony. Again, I—I'll concede on the one hand that [H.N.] presents very well today. I think that was expected. And I think that if we had only that context in mind, certainly we probably wouldn't have grounds.
>
> ***But when we kind of peel back the layers and we point out all of the people who are perceived to care greatly about [H.N.], versus who appeared besides [H.N.] herself to advocate for her release, I think that the evidence certainly weighs in favor of keeping her in the hospital.***[68]

There was no objection.

H.N. also points to the prosecutor's cross-examination of H.N., during which he asked her if her psychiatric provider, therapist, friend, and boyfriend were in court advocating for her release, to which H.N. responded that they were not. Again, there was no objection.

We need not decide whether these actions were improper. The fact that H.N. did not object at trial "'strongly suggests' that the remark[s] did not appear critically prejudicial in the trial's context."[69] Further, an appellate court presumes that the trial court disregarded inadmissible matters and followed the law.

---

[67] State v. Gower, 179 Wn.2d 851, 855, 321 P.3d 1178 (2014).

[68] Report of Proceedings (May 7, 2014) at 101 (emphasis added).

[69] Monday, 171 Wn.2d at 679 (quoting State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990)).

H.N. points out that the trial court remarked that "[t]here is something in [H.N.'s] testimony that just does not add up."[70] And she asserts, "Given that the judge noted H.N.'s testimony was lacking something, the deputy prosecutor's insistence that H.N.'s failure to present additional witnesses should be held against her was prejudicial to H.N."[71] This is not persuasive.

The judge's statement does not either establish prejudice or show that the judge relied on the allegedly improper argument. Rather, it merely demonstrates that the judge did not find H.N. credible.

In short, reversal is not required.

We affirm the order of commitment.

Cox, J.

WE CONCUR:

Spearman, C.J.

Jau, J.

---

[70] Report of Proceedings (May 7, 2014) at 109.

[71] Brief of Appellant at 16.