**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 82006-1-I |
| | ) | |
| J.G., | ) | DIVISION ONE |
| | ) | |
|        Appellant. | ) | UNPUBLISHED OPINION |
| | ) | |

MANN, C.J. — J.G. appeals the trial court's order committing her for 14 days of involuntary treatment. J.G. argues that the trial court erred in determining that she was gravely disabled under RCW 71.05.020(24), and that she was deprived of her constitutional right to have a jury determine if she had a mental illness justifying involuntary commitment. We affirm.

<u>FACTS</u>

J.G., who is in her forties, has lived with her grandmother her entire life. Although J.G. had a bedroom in her grandmother's home, about a year and a half before her detention she began living in a backyard garden shed. The shed was unfurnished, had a bare floor with some rags on it, an unhinged door, and lacked heat and running water. J.G. refused to move back into the house in spite of pleas from her grandmother.

Citations and pin cites are based on the Westlaw online version of the cited material.

J.G.'s grandmother began noticing J.G.'s hygiene worsening. For about the first year that she stayed in the shed, J.G. would still access the house to use the toilet and shower occasionally. During the six months before her detention, J.G. stopped showering and infrequently, if ever, used the bathroom. J.G. was toileting in the backyard.

J.G.'s grandmother often brought food and beverages and left them outside the shed. J.G. would drink the beverages, but her grandmother never saw her eat and observed that J.G. had lost weight in the months before her detention. J.G. refused to move back into the home, and instead stayed in the shed day and night. J.G.'s grandmother observed J.G. becoming more agitated and she began damaging her grandmother's property.

On September 3, 2020, a Snohomish County Designated Crisis Responder petitioned to detain J.G. for an initial 72 hours of psychiatric evaluation and treatment at her family's request. On September 4, 2020, the Snohomish County Superior Court granted the petition on the grounds that there was probable cause to believe J.G. was gravely disabled.

J.G. was detained at Swedish Hospital in Edmonds on September 4, 2020 and then transferred to Fairfax Hospital in Kirkland. Doctors at Fairfax Hospital diagnosed J.G. with schizophrenia spectrum disorder and other psychotic disorder. J.G.'s symptoms included: hallucinations, paranoia, delusions, labile, restless, guarded, intermittent eye contact, poor insight, poor judgment, disoriented and only oriented to person and place, agitated, and aggressiveness.

The court held a probable cause hearing where J.G.'s aunt, grandmother, and a court evaluator testified. The trial court found that J.G. suffers from a mental disorder rendering her gravely disabled under RCW 71.05.020(24) (a) and (b), and ordered her to remain at Fairfax Hospital for 14 days of inpatient treatment. RCW 71.05.240.

J.G. appeals.

ANALYSIS

A. Sufficiency of the Evidence

J.G. argues that there was insufficient evidence supporting the trial court's findings and, in turn, its conclusion of law that she was gravely disabled. We disagree.

We review an involuntary commitment order to determine whether substantial evidence supports a trial court's finding and, if so, whether those findings support the trial court's conclusion of law. In re Det. of H.N., 188 Wn. App. 744, 762, 355 P.3d 294 (2015). "Evidence is substantial if it is sufficient to convince a reasonable person of the truth of the finding." State v. Klein, 156 Wn.2d 102, 115, 124 P.3d 644 (2005). We review conclusions of law de novo. In re Estate of Haviland, 162 Wn. App. 548, 561, 255 P.3d 854 (2011).

RCW 71.05.020(24) defines "gravely disabled" as:

A condition in which a person, as a result of a behavioral health disorder: (a) is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

See also In re the Det. of LaBelle, 107 Wn.2d 196, 202, 728 P.2d 138 (1986).

Here, the court granted the civil commitment petition under both prongs (a) and (b) of the gravely disabled definition. We review each in turn.

There was sufficient evidence to support the trial court's finding that J.G. was in danger of serious physical harm resulting from failure to provide for her essential needs. RCW 71.05.020(24)(a). A finding of grave disability under prong (a) requires "recent, tangible evidence of a failure or inability to provide for such essential human needs as food, clothing, shelter, and medical treatment." LaBelle, 107 Wn.2d at 204-04. The failure to provide for one's own needs must present a "high probability of serious physical harm within the near future." LaBelle, 107 Wn.2d at 205.

J.G. was residing in an unheated garden shed with no floor, door, or running water. The hospital's mental health expert testified that the shed was not a safe environment. The court appropriately noted that the coming fall and winter months presented a risk of physical harm. J.G.'s diet and hygiene were also worsening, presenting additional risk. Combined, the evidence presented supports the trial court's findings under RCW 71.05.020(24)(a).

There is likewise sufficient evidence to support the trial court's finding that J.G. was manifesting severe deterioration and not receiving essential care for her health or safety. RCW 71.05.020(24)(b). To make this finding under prong (b), there needed to be evidence of a severe deterioration in functioning and evidence that, without intervention, a person will not receive treatment that is essential to their health and safety, and that absent such treatment there are articulable harmful consequences for the person. LaBelle, 107 Wn.2d at 207.

-4-

At baseline, J.G. was communicative, non-aggressive, ate regularly, and maintained hygiene. Prior to her commitment, J.G.'s aunt, grandmother, and the court evaluator testified that J.G. had become completely withdrawn, sitting in the shed without stimuli. As previously noted, J.G.'s eating and hygiene habits worsened. J.G. was becoming increasingly aggressive, damaging her grandmother's property. The trial court correctly noted that J.G. had deteriorated to the point of needing professional intervention. Without such intervention, there was substantial risk of continued harm to property and harm to J.G.'s health. In whole, the evidence supports the trial court's findings under RCW 71.05.020(24)(b).

Because substantial evidence supports the trial court's findings under both prongs of RCW 71.05.020(24), the trial court did not err in its legal conclusion that J.G. was gravely disabled.

B. Right to Jury Trial

J.G. argues that the trial court denied her constitutional right to have a jury determine if she had a mental illness justifying a 14-day involuntary commitment. We disagree.

This court rejected J.G.'s argument in In re Detention of S.E., 199 Wn. App. 609, 400 P.3d 1217 (2017). We confirmed S.E.'s holding that there is no right to a jury trial in a hearing on a 14-day involuntary commitment petition in In re Detention of T.C., 11 Wn. App. 2d 51, 59-60, 450 P.3d 1230 (2019).

J.G. argues that S.E. erred in its analysis of whether an individual is constitutionally entitled to a jury trial under Article I, Section 21 of the Washington

Constitution.[1]  See S.E., 199 Wn. App. at 614-15.  Because J.G. advances no novel

theory as to why our analysis in S.E. is incorrect, we decline to overrule its holding.

Affirmed.

_____
Mann, C.J.


WE CONCUR:

_____          _____
Coburn, J.

---

[1] Determining whether the state constitution grants the right to a jury trial requires two steps: "First, we determine the scope of the right to a jury trial as it existed at the time of our founding in 1889; second, we determine if the type of action at issue is similar to one that would include the right to a jury trial at that time." In re Det. of M.W. v. Dep't of Soc. and Health Serv., 185 Wn.2d 633, 662, 374 P.3d 1123 (2016).  S.E. underwent this analysis to arrive at its holding.  199 Wn. App. at 614-15.