**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In re Detention of: | No. 87421-7-I |
| J.L., | DIVISION ONE |
| Appellant. | UNPUBLISHED OPINION |

FELDMAN, J. — J.L. appeals a 14-day commitment order under the Involuntary Treatment Act, ch. 71.05 RCW. She asserts the trial court erroneously concluded she was "gravely disabled" under RCW 71.05.240(4)(a). Because J.L. has not established an entitlement to relief, we affirm.

I

On October 14, 2024, law enforcement transported J.L. to Skagit Valley Hospital (SVH), where she was evaluated by a designated crisis responder (DCR). According to the DCR report, J.L. had been engaging in unsafe and unhygienic behaviors such as urinating and defecating on the floor, not drinking fluids, and not eating sufficient food.

After consultation with an SVH emergency room physician, the DCR initiated an emergency detention, concluding J.L. was gravely disabled. A few days later, a mental health case manager at SVH filed a petition for 14-day involuntary treatment pursuant to RCW 71.05.230 alleging that, due to a mental

- 1 -

health disorder, J.L. presented a likelihood of serious harm to others and was gravely disabled.

A commitment hearing was held on October 22, 2024, which included testimony from J.L., her roommate/tenant, and Dr. Eric Larsen, a member of the SVH psychiatry team. Following the hearing, the trial court entered written findings of fact and conclusions of law, which incorporated its oral findings and conclusions. Relevant here, the court found J.L. was both in danger of serious physical harm due to a failure to provide for her essential needs and manifesting severe deterioration in routine functioning. The court also found J.L. has a diagnosis of bipolar I disorder; was exhibiting symptoms of low frustration tolerance, mood lability, poor impulse control, distractibility, and pressured speech; was refusing to take her medication; was struggling to care for herself yet was resistant to help; and had impaired insight into her mental health disorder. The court further determined that a less restrictive alternative was not in J.L.'s best interest.

Based on these findings, the court concluded J.L. was gravely disabled and ordered that she be detained at SVH for 14 days of involuntary mental health treatment. J.L. appeals.[1]

II

J.L. asserts the trial court erroneously concluded she should be detained for up to 14 days of involuntary mental health treatment. We disagree.

RCW 71.05.240(4)(a) states in relevant part as follows:

[I]f the court finds by a preponderance of the evidence that a person detained for behavioral health treatment, as the result of a behavioral

---

[1] SVH also filed a petition for 90 days of involuntary mental health treatment, but the petition was later dismissed by agreement of the parties. That petition is not at issue here.

health disorder, . . . is gravely disabled, and, after considering less restrictive alternatives to involuntary detention and treatment, finds that no such alternatives are in the best interests of such person or others, the court shall order that such person be detained for involuntary treatment not to exceed 14 days in a facility licensed or certified to provide treatment by the department or under RCW 71.05.745.

As this statutory provision requires, the trial court here concluded that J.L. was "gravely disabled" and could therefore be detained for up to 14 days of involuntary treatment.

Our review is both limited and deferential. We must determine "whether substantial evidence supports the [trial court's] findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment." *In re Det. of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986). "Substantial evidence is the quantum of evidence sufficient to persuade a fair-minded person of the truth of the declared premise." *In re Det. of H.N.*, 188 Wn. App. 744, 762, 355 P.3d 294 (2015). "[W]hen evaluating the sufficiency of the evidence, we consider the evidence in the light most favorable to the Petitioner[ ]," which here is SVH. *In re Det. of A.M.*, 17 Wn. App. 2d 321, 330, 487 P.3d 531 (2021).

The trial court determined that J.L. was "gravely disabled" under both prong (a) and prong (b) of RCW 71.05.020(25). Starting with prong (a), RCW 71.05.020(25)(a) defines "gravely disabled" as "a condition in which a person, as a result of a behavioral health disorder . . . [i]s in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety." To establish grave disability under this statutory provision, the petitioner must prove both "recent, tangible evidence of failure or inability to provide

for . . . essential human needs" and that "the failure to meet these needs placed [the person] 'in danger of serious physical harm.'" *A.M.*, 17 Wn. App. 2d at 334 (quoting *In re LaBelle*, 107 Wn.2d at 204-05; former RCW 71.05.020(22)(a) (2018)). Essential human needs, in turn, include "food, clothing, shelter, and medical treatment." *In re LaBelle*, 107 Wn.2d at 204-05.

Here, substantial evidence supports the trial court's finding that J.L. was in danger of serious physical harm resulting from a failure to provide for her essential needs. Dr. Larsen testified J.L had been refusing all medication while in SVH care and stated this was a "point of contention" given J.L.'s history of congestive heart failure with systolic dysfunction, amongst other diagnoses. He further testified that J.L. had been generally resistant to care at SVH, which he attributed to her bipolar disorder. Acknowledging the significance of such care and medication, J.L. testified, "I have been diagnosed with a small aorta problem that, if it were to rupture, I would die within 15 seconds, and nobody could do anything to stop it." J.L.'s roommate/tenant also testified that J.L. allowed food to rot in the fridge, left feces in various places in the home, fell several times and could not get up, and failed on several occasions to pay utility bills.[2] This evidence is sufficient to persuade a fair-minded person that J.L., as a result of her bipolar I disorder, was in danger of serious physical harm due to her failure to provide for her essential needs. These findings, in turn, support the trial court's determination that J.L. was gravely disabled under RCW 71.05.020(25)(a).

---

[2] While the trial court discounted some of the roommate/tenant's testimony based on a purported "ulterior motive as to why he's testifying the way he did," it expressly relied on the above testimony in its oral findings.

Addressing this prong, J.L. contends that cognitive delirium as a result of a urinary tract infection (rather than bipolar I disorder) could have been responsible for the foregoing symptoms and that Dr. Larson never ruled out that possibility. This argument is not supported by the record. Dr. Larson testified that he attributed the symptoms J.L. was experiencing to her bipolar I disorder diagnosis. The trial court likewise stated:

> The testimony from Dr. Larsen was that there is a historic diagnosis of bipolar Type 1, that onset was sometime between the years of 50 and 55. That he needs to at this time rule out a neurocognitive disorder or delirium. That she currently has, as recent labs showed, a UTI, which may be the result caused the confusion and the delirium that she is currently experiencing.
>
> However, Dr. Larsen also testified that her behaviors at this time are the result of her mental health disorder, not the UTI.

Contrary to J.L.'s argument, her bipolar I disorder, not her possible delirium, constituted the "behavioral health disorder" for purposes of RCW 71.05.020(25)(a). Substantial evidence supports that finding, particularly when considered in the light most favorable to the petitioner as required.

Turning to prong (b), RCW 71.05.020(25)(b) defines "gravely disabled" as "a condition in which a person, as a result of a behavioral health disorder . . . manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety." Evidence of grave disability under RCW 71.05.020(25)(b) "must include recent proof of significant loss of cognitive or volitional control" and that the individual "would not receive, if released, such care as is essential for . . . her health or

safety." *In re LaBelle*, 107 Wn.2d at 208. "Implicit in the definition of gravely disabled under RCW 71.05.020(1)(b) is a requirement that the individual is *unable,* because of severe deterioration of mental functioning, to make a rational decision with respect to [their] need for treatment." *Id.*

Substantial evidence supports the trial court's finding that J.L. had a recent significant loss in cognitive and volitional control and would not receive, if released, such care as is essential for her health and safety. In its written findings, the trial court noted J.L. "has impaired insight into her mental disorder[,]" as well as "low frustration tolerance, mood lability, poor impulse control, distractibility, [and] pressured speech." In its oral findings, the court similarly noted J.L. "does not understand or is not willing to understand the benefit and the reasons even just for her medical medications" which "may save her life." Relevant to these findings, Dr. Larsen testified regarding J.L.'s lack of volitional control, such as lying in the middle of the hospital floor and refusing to get up until SVH security and staff helped her back to her room. Dr. Larsen also testified he did not believe J.L. could "provide for her essential health or safety needs" and if released at the time of the commitment hearing she would "likely require rehospitalization." This evidence, viewed favorably to the petitioner, is sufficient to persuade a fair-minded person that J.L. had a significant loss of cognitive and volitional control, shown through her mood lability, poor impulse control, and observed behaviors in SVH. These findings, in turn, support the trial court's conclusion that J.L. was gravely disabled under RCW 71.05.020(25)(b).

J.L. contends, however, that the court failed to find "an essential component of commitment under the 'b' criterion—that J.L.'s current condition reflected severe deterioration from some prior baseline state of mental functioning." But RCW 71.050.020(25)(b) requires a finding of "severe deterioration in routine functioning," not deterioration from a predetermined baseline. J.L. cites to *LaBelle* in support of her contention, but this reliance is misplaced. In *LaBelle*, the Supreme Court concluded that substantial evidence supported the trial court's finding of grave disability, as there was evidence that LaBelle manifested "severe deterioration of his ability to function *on a routine level*" and that "[h]is deterioration was such that he lacked awareness of hygiene and *routine care*." 107 Wn.2d at 209-10 (emphasis added). Here, there was also substantial evidence that J.L. manifested severe deterioration of her ability to function on a routine level and that she lacked awareness of routine care. Dr. Larsen testified J.L. was placed in a Posey bed[3] to prevent elopement and required staff assistance to move from the Posey bed to eat or use the restroom. The record also shows J.L. required a one-to-one sitter and was "very resistant" to her need for treatment. Thus, substantial evidence supports the trial court's finding that J.L. manifested severe deterioration in routine functioning.

Lastly, J.L. also argues "the trial court erred when it found that J.L. being a former domestic violence (DV) victim led to concerns about her ability to manage her health, safety, and potential care in the community." Responding specifically to this argument, the State concedes, "on this record, J.L.'s experience of domestic

---

[3] Dr. Larson testified that a Posey bed is a "contained bed primarily made out of mesh and other soft materials."

violence 'is in no way tied to her mental health disorder,' and therefore was likely irrelevant to the legal issue of grave disability." While we accept the State's concession, J.L.'s argument fails because, as the State also notes, the trial court did not state or imply this fact was essential to its holding, and the State presented substantial evidence of grave disability under both prongs of RCW 71.05.020(25), which amply supports the trial court's findings. *See In re LaBelle*, 107 Wn.2d at 213 (affirming commitment order despite asserted error because "the State presented substantial evidence of grave disability under RCW 71.05.020(1)(b) which the trial court could reasonably have found to be clear, cogent and convincing"); *Matter of Det. of K.P.*, 32 Wn. App. 2d 214, 224, 555 P.3d 480 (2024) (affirming commitment order despite asserted error where "trial court's conclusion did not rest solely on K.P.'s assaultive behavior, but also relied on its findings that K.P.'s mental illness prevented her from meeting her essential needs").

Because substantial evidence supports the trial court's findings and those findings support its 14-day commitment order, J.L. has not established an entitlement to relief.

Affirmed.

Feldman, J.

WE CONCUR:

Díaz, J.

, ACJ

- 8 -