# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of<br><br>M.M. | No. 87425-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — The superior court ordered M.M. committed under RCW 71.05.240 for a 14 day involuntary treatment after finding M.M. had a behavioral health disorder, which the court presumed was major depressive disorder (MDD), as a result of which she presented a likelihood of serious harm to herself and was gravely disabled. M.M. argues the superior court erred in concluding M.M. had a behavioral health disorder under RCW 71.05.240(4)(a) because the petitioners did not provide any testimony M.M. had been diagnosed with MDD. Because there was sufficient evidence to infer M.M. had a behavioral health disorder, we affirm.

I

Joanne Clemo, a licensed independent clinical social worker, testified that, on September 29, 2024, M.M. was admitted to treatment after she threatened to lay down in front of a train. After law enforcement stopped the train, M.M. stated she would return to the tracks the next day.

Designated Crisis Responder Elizabeth Cole, conducted an involuntary mental health evaluation of M.M. Cole determined M.M. would not be safe at home and that, "in order to keep her safe, she needed to be in the hospital."

Cole petitioned for initial detention. The petition recounted the alleged situation that led to M.M. arriving at the hospital and alleged that "[M.M.] has a history of depression and borderline personality disorder." Cole concluded in the petition that M.M. "present[ed] an imminent likelihood of serious harm . . . to self."

On October 3, 2024, Clemo and Catherine Webb, an advanced registered nurse practitioner, petitioned for 14 day involuntary treatment. The petitioners alleged M.M. had been diagnosed with MDD and that M.M. "[p]resent[ed] a likelihood of serious harm" to herself. The petitioners also stated they believed she was "at high risk for repeated suicide attempt[s] as evidenced by her past attempt, increased hopelessness and lack of motivation for treatment." They argued, "There is no lesser restrictive alternative to detention which is in the best interest of [M.M.] and others as evidenced by severe depression and suicidal ideation."

On October 4, 2024, the court held a commitment hearing. The petitioners called three witnesses: Social Worker Katie Monday, Clemo, and Cole.

Monday testified that the day before the hearing M.M. was "semi-blocking" the bathroom door. She also testified she talked with M.M. while M.M. was on the floor of the bathroom, noting "she was very resistant to getting up off of the bathroom floor or with talking with anybody," and watched M.M. "gently bang her

2

head against the wall." Monday "found [M.M.] to be very hopeless and depressed." Monday also noted M.M. had not voiced to her any plan to act on suicidal thoughts during their interactions. She also testified M.M. said "she didn't want to exist, indicating she was very depressed to me." Monday concluded, "In my interactions with her, I have found her to be very hopeless and depressed."

Clemo testified that she had worked with M.M. previously and that M.M. had "endorsed that over the last four years her depression has worsened." Clemo also testified M.M. declined to take her prescribed "Zyprexa" and had utilized one time "as-needed medications." Clemo noted her concerns that M.M.'s baseline was deteriorating because M.M. had lost her job, no longer engaged in physical activity, and had lost passion in "advocating for herself." Clemo testified that, when M.M. engaged in group time, M.M. was unable to tolerate the content, "highlighting her presentation and her depression."

Clemo also indicated self-care was "not necessarily a concern" because M.M.'s amount of daily sleep was bordering on excessive, M.M. was eating meals, and her hygiene was not an issue. She also reported that M.M. had not attempted suicide or had plans for suicide since being detained. Based upon M.M.'s attempts at self-harm, Clemo testified she believed M.M. had "lost cognitive and volitional control" at the time of the hearing. Clemo concluded M.M. was "severely depressed" and needed medication and therapy.

Cole testified M.M. was at substantial risk of harming herself. Cole initially considered M.M. might be able to go home because M.M. indicated she would not

hurt herself. Cole then determined less restrictive alternatives were not available when M.M. covered her head with covers from the bed she was in and refused to talk with Cole.

In its oral ruling, the superior court concluded, "[T]he State has met its burden up to 14 days under both self-harm and also under grave disability— under, well, frankly, both factors." In discussing its ruling, the court said, "I'm presuming the diagnosis in this case is suicide-major depression. Ms. Clemo testified that [M.M.] has depression and is seriously depressed. There was not, though, a testimony to a specific diagnosis by the provider but that it appears that that is everything that was testified to."

The court ordered 14 day commitment and stated the reason for commitment was "Mental Disorder: [MDD]." The court found as a result of a behavioral health disorder a likelihood of serious harm in M.M. inflicting harm on herself. And, also as a result of a behavioral health disorder, the court found that M.M. was gravely disabled: "Diagnosis of Major Depressive Disorder. . . . Symptoms include not wanting to take medication, feeling hopeless, attempt to harm self by going on train tracks; depress, hopelessness; statements as to wanting to kill self." The court checked the box under conclusions of law for "grave disability" but not for "likelihood of serious harm."

On October 14, 2024, Clemo and Webb petitioned for 90 day involuntary treatment on the basis that M.M. was gravely disabled. The attached affidavit of Webb reported M.M. was diagnosed with "Major Depressive D/O [disorder] and

4

BPD [bipolar disorder]." On October 16, 2024, petitioners adjusted their request from a 90 day involuntary treatment to a "less restrictive order plus two days." M.M. agreed to the less restrictive order, and the court ordered a 90 day involuntary commitment with less restrictive alternative treatment. M.M.'s agreed release date was January 14, 2025.

M.M. appeals the 14 day involuntary commitment order.

II

M.M. argues there was no factual basis to order commitment because petitioners failed to provide evidence M.M. had MDD.[1] We agree there was insufficient evidence to conclude M.M. had the diagnosis of MDD, but we disagree there was insufficient evidence to conclude M.M. had a behavioral health disorder.

The involuntary treatment act (ITA) requires a court to order a person detained for no more than 14 days "if the court finds by a preponderance of the evidence that a person detained for behavioral health treatment, as the result of a behavioral health disorder," "either (1) poses a substantial risk of harm to him or herself, others, or the property of others, or (2) is gravely disabled." RCW 71.05.240(4)(a); In re Det. of M.K., 168 Wn. App. 621, 630, 279 P.3d 897 (2012) (citing In re Det. of Labelle, 107 Wn.2d 196, 201-202, 728 P.2d 138 (1986)).

---

[1] Citing In re Det. of M.K., 168 Wn. App. 621, 626, 279 P.3d 897 (2012), M.M. argues her appeal is not moot because orders of commitment can be used as evidence in future commitments for up to three years. The State agrees. We accept M.M.'s challenge as not moot.

A "behavioral health disorder" "means either a mental disorder as defined in this section, a substance use disorder as defined in this section, or a co-occurring mental disorder and substance use disorder." RCW 71.05.020(8). A "mental disorder" is defined "broadly" as "any organic, mental, or emotional impairment which has substantial adverse effects on a person's cognitive or volitional functions." RCW 71.05.020(39); In re Det. of R.S., 124 Wn.2d 766, 771, 881 P.2d 972 (1994). RCW 71.05.020(39)'s definition of mental disorder is a legal definition. R.S., 124 Wn.2d at 772 (discussing former RCW 71.05.020(2) (LAWS OF 1989, ch. 420, § 13)).

"When a trial court has weighed the evidence, appellate review is limited to determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment." In re Det. of A.S., 91 Wn. App. 146, 162, 955 P.2d 836 (1998). "Substantial evidence is the quantum of evidence 'sufficient to persuade a fair-minded person of the truth of the declared premise.' " In re Det. of K.P., 32 Wn. App. 2d 214, 221, 555 P.3d 480 (2024) (quoting In re Det. of H.N., 188 Wn. App. 744, 762, 355 P.3d 294 (2015)). "We review the evidence in a light most favorable to the petitioner." Id. On appeal, we accept unchallenged findings as true. Id.

Viewed in the light most favorable to the petitioners, there was sufficient evidence to persuade a fair-minded person that M.M. had a behavioral health disorder. Two social workers relayed M.M. was "depressed," with Clemo testifying she thought M.M. was "severely depressed." Clemo also testified M.M. "endorsed

that over the last four years her depression has worsened, her suicidality has worsened." She also testified M.M.'s participation in group time "really brings out [M.M.'s] depression." While there is no evidence of a diagnosis of depression or MDD, these statements, combined with M.M.'s prescribed medications and testimony of M.M.'s symptomology, support an inference that M.M. had a behavioral health disorder of depression.

Citing unreported authority, M.M. argues "being 'depressed' is a symptom of MDD, but it is not synonymous, and it is not sufficient for diagnosis."[2] We agree with M.M. insofar as there is insufficient evidence to support a finding of a diagnosis of MDD. However, the petitioners' burden is to meet the legal definition of "mental disorder," and substantial evidence supported an inference M.M. had depression, a behavioral health disorder.

III

M.M. argues we may reverse a commitment order " 'in part' " based on insufficient evidence to support a finding that M.M.'s behavioral health disorder rendered her gravely disabled.

Because a superior court may order commitment under either likelihood of serious harm or grave disability, RCW 71.05.240(4)(a), and we uphold the court's

---

[2] In re Dependency of X.C.S.-H., No. 77281-3-I (Wash. Ct. App. April 30, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/772813.pdf. There, we said there was not substantial evidence that a parent in a parental rights termination case had MDD. Id. at 11. But we nevertheless said that "[r]egardless of its characterization," substantial evidence supported that the parent had depression that impacted her parenting. Id. at 11-12.

finding of likelihood of serious harm,[3] we do not discuss whether there was sufficient evidence to support a finding of gravely disabled.

We affirm.

_Birk, J._

WE CONCUR:

_Feldman, J._          _Coburn, J._

---

[3] While the superior court did not check the box concluding M.M. presented a likelihood of serious harm, M.M. does not assert error on this basis, and the superior court clearly found likelihood of serious harm based on its making an oral ruling to that effect and entering written factual findings that "considered the applicable statutory criteria." Labelle, 107 Wn.2d at 219-20 (requiring superior courts to make particular written findings before appellate courts may consider whether oral rulings supplement the findings).