IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 76617-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | ORDER ON MOTIONS |
| v. | ) | FOR RECONSIDERATION |
| | ) | AND TO WITHDRAW |
| TRISTAN JAMES MELLAND, | ) | AND SUBSTITUTE OPINION |
| | ) | |
| Appellant. | ) | |

Respondent the State of Washington filed a motion for reconsideration and appellant Tristan James Melland filed a motion for reconsideration of the opinion filed on May 6, 2019. We grant the State's motion to reconsider, grant in part and deny in part Melland's motion to reconsider, withdraw the opinion filed on May 6, 2019, and file a substitute opinion. Now, therefore, it is hereby

ORDERED that the State's motion to reconsider is granted, Melland's motion to reconsider is granted in part and denied in part, and the opinion filed on May 6, 2019 shall be withdrawn and a substitute opinion shall be filed.

DATED this 19th day of August, 2019.

_Schindler, J._

_Andrus, J._

_Dwyer, J._

FILED
2019 AUG 19 AM 11:00
COURT OF APPEALS DIV I
STATE OF WASHINGTON

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 76617-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| TRISTAN JAMES MELLAND, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 19, 2019 |

SCHINDLER, J. — The State charged Tristan James Melland with assault in the second degree of D.J. and felony violation of a court order prohibiting contact with D.J. The jury convicted Melland of assault in the second degree and the lesser included offense of misdemeanor violation of a no-contact order. Melland seeks reversal, arguing sufficient evidence does not support the jury finding he committed the crimes. Melland also argues sufficient evidence does not support the jury finding an essential element of assault in the second degree, reckless infliction of substantial bodily harm; and police officer testimony violated his right to confrontation. In the alternative, Melland seeks dismissal without prejudice of the misdemeanor violation of a no-contact order conviction on the grounds that the charging document is deficient. We conclude sufficient evidence supports the jury finding Melland committed the crimes but sufficient evidence does not support the jury finding Melland recklessly inflicted substantial bodily

harm. We conclude police officer testimony did not violate Melland's right to confrontation and the charging document contains the essential elements of the lesser included offense of misdemeanor violation of a no-contact order. Accordingly, we reverse the assault in the second degree conviction and affirm the misdemeanor violation of a no-contact order conviction.

## FACTS

In 2016, 29-year-old Tristan James Melland and 31-year-old D.J. lived together in her apartment in Queen Anne. D.J. worked as a bartender.

On March 31, 2016, D.J. experienced severe vomiting and nausea after she stopped drinking alcohol. The Virginia Mason Hospital records state, " '[R]elationship stressors led to excessive alcohol intake.' " A Virginia Mason doctor diagnosed D.J. with alcohol withdrawal and prescribed Librium and potassium chloride.

On April 4, 2016, the Seattle Municipal Court (SMC) entered a domestic violence no-contact order in City of Seattle v. Tristan J. Melland, case no. 614080. The no-contact order prohibited Melland from having any contact with D.J. "directly" or "indirectly." Melland was present. Melland signed and acknowledged receipt of a copy of the no-contact order. The no-contact order expired on April 4, 2018. The order states, in pertinent part:

A. do not cause, attempt, or threaten to cause bodily injury to, assault, sexually assault, harass, stalk, or keep under surveillance the protected person.
B. do not contact the protected person directly, indirectly, in person or through others, by phone, mail, electronic or any other means, except for mailing or service of process of court documents through a third party, or contact by the defendant's lawyers.
C. do not knowingly enter, remain, or come within 500 [feet] . . . of the protected person's residence, school, workplace, [or] . . . anywhere protected party is.

2

The order warns Melland, "You have the sole responsibility to avoid or refrain from violating the order's provisions," and violation of the terms of the no-contact order "is a criminal offense."

On June 11, 2016, Seattle Police Officer Kevin Stewart responded to a June 10 911 call reporting a "domestic violence assault incident" and "possible violation of a no-contact order." When Officer Stewart arrived at the apartment, D.J. was "visibly shaking" and "crying," "complaining of an injury," and holding her hand. Officer Stewart noticed her right pinky finger and ring finger were "discolored and bruised." Officer Stewart took photographs of her right hand and her two hands side-by-side. Officer Stewart checked the police database for a no-contact order. There was a valid no-contact order in effect that prohibited Melland from having any contact with D.J.

On June 15, 2016, the State charged Melland with domestic violence felony violation of a no-contact order in violation of RCW 26.50.110(1) and (4) and interfering with domestic violence reporting in violation of RCW 9A.36.150. The information alleged Melland committed the crimes against a family or household member.

On June 26, D.J. experienced severe nausea and abdominal pain. D.J. told the Virginia Mason Hospital emergency room physician Dr. David Frank that she " 'managed to stay away from alcohol until two weeks ago when, again, relationship stressors (boyfriend's trial for domestic dispute) led' " her to " '[e]ngage[ ] in a one-week long binge where she was drinking a fifth [of a gallon] of bourbon per day as a way of coping with recent stressors in her life.' " Dr. Frank noted D.J. " 'lives in Queen Anne with boyfriend of six years who is abusive' " but " 'is no longer living with her.' " Dr. Frank diagnosed alcohol withdrawal and admitted D.J. to the hospital. Dr. Frank

ordered an X-ray of her right hand. X-rays showed a " 'nondisplaced fracture' " of her right pinky finger.

On June 29, Detective Jeffrey Page interviewed D.J. at Virginia Mason. Detective Page took photographs of her right hand "splinted and wrapped" in a bandage and "unwrapped" to show the "bruising to [her] right pinky finger."

A Virginia Mason social worker met with D.J. before discharge from the hospital on July 1 to discuss "concerns of domestic violence." D.J. told the social worker that " 'following a fight with her boyfriend about a week or so ago, she was feeling lonely and consumed significantly more alcohol than usual.' "

On July 14, 2016, Virginia Mason emergency room physician Dr. Huma Memon admitted D.J. for alcohol withdrawal. D.J. told Dr. Memon she drank " 'about a fifth-and-a-half of bourbon the night before."

Before her discharge the next day, social worker Janelle Moore met with D.J. because doctors "had raised the concern that there was a history of domestic violence, and they wanted to make sure that the patient had a safe place to go." D.J. expressed "concern about her ex-boyfriend with DV[1] history, and a concern about her safety." D.J. told Moore her "ex-boyfriend was violating a protection order that prevents him from being near her." D.J. said she planned to "get her things from her apartment, which she indicated was her own private lease but where [Melland] had also lived and had a key." D.J. told Moore her "lease was up at the end of July and she wouldn't be returning there."

On November 10, 2016, the State filed an amended information to add a charge of domestic violence assault in the second degree in violation of RCW 9A.36.021(1)(a).

---

[1] Domestic violence.

The amended information alleged that "on or about June 10, 2016," Melland "did intentionally assault another and thereby recklessly inflict substantial bodily harm upon [D.J.]" in violation of RCW 9A.36.021(1)(a).

Before trial, the court ruled the statements D.J. made to the Virginia Mason health care providers for purposes of medical diagnosis or treatment were admissible under ER 803(a)(4).[2] The court granted the defense motion to redact other statements in the medical records, such as references to Melland being in "jail." The court also granted the defense motion to redact the findings of fact in the certified copy of the April 4, 2016 SMC no-contact order.

The prosecutor conceded the 911 call and the statements D.J. made to the police were not admissible if she did not testify. The prosecutor told the court that according to the victim advocate, D.J. "did not indicate whether she was going to show up or not," and the victim advocate "expressed low confidence to me that [D.J.] would show up. So at this point, unless something changes, it's my understanding she's not going to show up."

In opening statement, the prosecutor told the jury, "I don't know if [D.J.]'s going to testify and if she does, I don't know what she's going to say; but I want to talk about what I do know the evidence will show and what you can expect to see in this case." The prosecutor asserted Melland committed the charged crimes of interfering with domestic violence reporting, felony violation a no-contact order, and assault in the

---

[2] ER 803(a)(4), "Statements for Purposes of Medical Diagnosis or Treatment," provides, "The following are not excluded by the hearsay rule, even though the declarant is available as a witness":

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

second degree. The prosecutor displayed the redacted April 4, 2016 no-contact order and told the jury:

> You can see that the listed defendant is Tristan Melland, the defendant here today. You can see that the no-contact order expires on April 4, 2018. We all know we haven't reached that date yet, so it's still applicable.
> We know that it protects [D.J]; it lists her by name, birth date, gender, and race. We know that it identifies the defendant by name, gender, birth date, and race. But it also describes at the bottom of this page, what the defendant is not allowed to do. Let's zoom in on that.
> There's a number of very important provisions that are at issue in this case, and this order prohibits the defendant from doing a number of very harmful things, including assaulting [D.J]. Right in there on number (A), "Do not cause or attempt to threaten to cause bodily injury through assault," so on and so forth.

The prosecutor asserted the evidence would show Melland

> broke her finger when he grabbed her right hand so hard, squeezed, and twisted it that the bone broke; it was a redisplayed [sic] fracture. The abuse th[at] [D.J] suffered in this relationship with Mr. Melland was a trigger. It was a trigger for her alcoholism.

In the defense opening statement, counsel conceded, "Yes, there is a no-contact order, and, yes, there's an injury to [D.J.]'s finger." But defense counsel asserted the State could not prove beyond a reasonable doubt that Melland committed "the specific charges that they have filed against him."

Officer Stewart, Detective Page, and Virginia Mason health care providers Dr. Frank, Dr. Memon, and social worker Moore testified at the trial. The court admitted into evidence a redacted certified copy of the April 4, 2016 SMC domestic violence no-contact order, a certified copy of Melland's driver's license, and a number of photographs of D.J.'s hands and the bruising and swelling to her right pinky and ring fingers. Neither D.J. nor Melland testified.

Officer Stewart and Detective Page testified about the steps taken to verify the April 4, 2016 SMC domestic violence no-contact order that prohibited Melland from contacting D.J. was in effect until April 4, 2018. Detective Page confirmed there were no other no-contact orders in effect that pertained to D.J. Detective Page testified the name and date of birth on the no-contact order matched the name and date of birth on Melland's driver's license.

Dr. Frank testified that D.J. said, " 'My boyfriend broke my finger.' " Dr. Frank "could tell that her finger looked injured because it was pretty tender and painful. It had some bruising and was somewhat swollen." Dr. Frank testified that D.J. told him, " 'During domestic dispute with boyfriend, he grabbed the[ ] phone from patient's hand which hurt her finger.' "

Dr. Memon testified that D.J. said her " 'boyfriend of six years has abused her in the past and is responsible for breaking her finger.' " Dr. Memon noted " '[d]omestic abuse' " and that " '[c]ounseling was provided regarding area resources for victims of domestic violence and that is able to contact any of these resources for help.' "

At the conclusion of the evidence, the court dismissed the charge of interfering with domestic violence reporting. The court ruled, "[T]here is not evidence upon which a reasonable juror could properly rely to conclude that the phone grab was an interference with reporting . . . and there is not evidence that there was an attempt or intent to call for any kind of help at that point."

The court instructed the jury on assault in the second degree and felony violation of a no-contact order. At the request of the defense and without objection from the

State, the court also instructed the jury on the lesser included offense of misdemeanor violation of a no-contact order.

The assault in the second degree to-convict jury instruction states, in pertinent part:

> To convict the defendant of the crime of assault in the second degree, as charged in Count THREE, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about June 10, 2016, the defendant intentionally assaulted [D.J.];
> (2) That the defendant thereby recklessly inflicted substantial bodily harm on [D.J.].

The felony violation of a no-contact order to-convict jury instruction states, in pertinent part:

> To convict the defendant of the crime of felony violation of a court order as charged in Count ONE, each of the following five elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about June 10, 2016, there existed a no-contact order applicable to the defendant;
> (2) That the defendant knew of the existence of this order;
> (3) That on or about said date, the defendant knowingly violated a provision of this order;
> (4) That the defendant's conduct was an assault that did not amount to assault in the first or second degree.

The to-convict jury instruction on the lesser included offense of misdemeanor violation of a no-contact order states, in pertinent part:

> To convict the defendant of the crime of violation of a court order, each of the following four elements of the crime must be proved beyond a reasonable doubt:
> (1) That on June 10, 2016, there existed a no-contact order applicable to the defendant;
> (2) That the defendant knew of the existence of this order;
> (3) That on said date, the defendant knowingly violated a restraint provision of this order prohibiting contact with the protected party.

8

The prosecutor addressed the jury instructions in closing argument. The prosecutor told the jury that if the jury found Melland guilty of assault in the second degree, it should find Melland not guilty of felony violation of a no-contact order and guilty of the lesser included offense of misdemeanor violation of the no-contact order.

> I'm asking you to find the defendant not guilty of felony violation of a no-contact order because if you have found him guilty of Assault 2, I cannot then prove felony violation because one of the elements is that the assault in the felony violation is not Assault 2. So I'm asking you to find the defendant guilty of Assault 2, not guilty of felony violation of a no-contact order; and then I'm also asking you to find the defendant guilty of the lesser included on Count 1, which is nonfelony violation of a no-contact order because he violated the order that prohibited him from having any contact with [D.J.] the second he walked in the door in her building on June 10, 2016.

The prosecutor argued the statements D.J. made to the Virginia Mason health care providers established Melland committed assault in the second degree. "So [D.J.] described the incident on June 10 as an altercation with her boyfriend. This is what she said to the hospital staff, 'He ripped the phone out of her hand so hard that it broke her finger.'" The prosecutor argued Melland recklessly inflicted substantial bodily harm by "twist[ing]" and "turn[ing]" D.J.'s hand and finger "so hard that it breaks":

> And just to go into Assault 2. What does recklessly inflict mean? It means he knows of and disregards the substantial risk of his conduct. You're going to grab someone's hand really hard and twist it and turned it so hard that it breaks, of course, you are disregarding a substantial risk of your conduct, which is a gross deviation from conduct of a reasonable person. A reasonable person does not go up to someone and twist her fingers so hard that it breaks. That's what recklessly inflict means. Recklessly inflicts substantial bodily harm. What's substantial bodily harm? It defines it in your jury instruction. It's a fracture. You break a bone, that's substantial bodily harm.

The prosecutor argued the certified copy of the SMC no-contact order established Melland knew of the existence of the no-contact order and on June 10, 2016, he knowingly violated the order by having contact with D.J.

Defense counsel argued the State did not prove that Melland violated the no-contact order or that he "is responsible for breaking her finger."

> [T]here was a no-contact order put in place between two individuals that you have not heard from throughout this trial, [D.J.] and Tristan Melland. You have no idea why that no-contact order came to be.
> . . . You haven't heard anything about the nature of Mr. Melland and [D.J.]'s relationship.
> You don't know — and you have a jury instruction explaining what domestic violence could be, what a domestic relationship is — you don't know whether Mr. Melland and [D.J.] have ever lived together. You don't know what the nature of their relationship, if it was dating, if they lived together as roommates at some point in that past, whether they're family members. There could be a wide variety of things.

In rebuttal, the prosecutor argued the evidence established Melland committed the crimes of assault in the second degree and violation of a no-contact order:

> [D.J.'s] finger was broken by the defendant on June 10, she called 911, the next day a police officer responded and saw her freshly broken finger, so we know it was already injured on June 11. It was fresh, so we know it was probably on June 10 when the first 911 call came. We know it was on Queen Anne because that's where the 911 calls came from, and that's where the police officer responded to, [D.J.]'s apartment. We know that [D.J.] was living there with a boyfriend of six years, and this is the same boyfriend where she referred in the medical records as the one that she was protected from in the no-contact order.

The prosecutor argued the statements D.J. made to the Virginia Mason health care providers "quite clearly" identify Melland as "the person who's not supposed to contact me because of the no-contact order."

> Now, defense also said you haven't heard evidence of where, when, why, how, all that kind of stuff, unnamed boyfriend. Well, [D.J.] doesn't need to name her boyfriend to hospital staff. She identified him quite clearly; this is the person who's not supposed to contact me because

of the no-contact order. We already went over that. She's talking about Mr. Melland.

The prosecutor reiterated the assault "happened when he grabbed her fingers so hard, twisted and grabbed and squeezed it that it broke."

> Now, how did this happen? Well, you do know how it happened actually. It happened when he grabbed her fingers so hard, twisted and grabbed and squeezed it that it broke, that's how; but the thing is, how it happened is not one of the elements that I bear [the] burden of proving beyond a reasonable doubt.

The jury found Melland guilty of assault in the second degree and the lesser included offense of misdemeanor violation of the no-contact order. By special verdict, the jury found D.J. and Melland were "members of the same family or household prior to or at the time" Melland committed the crimes.

## ANALYSIS

<u>Sufficiency of the Evidence</u>

Melland claims sufficient evidence does not support the jury finding he committed assault in the second degree or misdemeanor violation of a no-contact order. In the alternative, Melland contends the State did not prove beyond a reasonable doubt the essential element of assault in the second degree—that he recklessly inflicted substantial bodily harm.

The State has the burden to prove every element of the crime charged beyond a reasonable doubt. U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3; <u>In re Winship</u>, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." <u>Winship</u>, 397 U.S. at 364; <u>State v. Rich</u>, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). Sufficiency of the

evidence is a question of constitutional law that we review de novo. Rich, 184 Wn.2d at 903.

Evidence is sufficient to support a conviction if any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. State v. Johnson, 188 Wn.2d 742, 750-51, 399 P.3d 507 (2017). A challenge to the sufficiency of the evidence admits the truth of the State's evidence. State v. Witherspoon, 180 Wn.2d 875, 883, 329 P.3d 888 (2014). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In determining sufficiency, circumstantial evidence is no less reliable than direct evidence. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on "issues of witness credibility." Witherspoon, 180 Wn.2d at 883.

### Evidence Melland Committed the Crimes

Melland contends the evidence does not support the jury finding he committed the crimes of assault in the second degree and misdemeanor violation of a no-contact order. We disagree.

Melland does not challenge admission of the statements D.J. made to the Virginia Mason health care providers under ER 803(a)(4) or the certified copies of the no-contact order and his driver's license.

The medical records show that in March 2016, " 'relationship stressors' " were a cause of D.J.'s excessive drinking and alcohol withdrawal. On April 4, 2016, an SMC

12

judge entered a no-contact order prohibiting "Tristan J. Melland" from having any contact with D.J.

The certified copy of the April 4, 2016 domestic violence no-contact order identifies D.J. and Melland by name, birth date, gender, and race. The no-contact order identifies Tristan Melland with a date of birth of "12-15-1986," the gender of "Male," and his race as "White." The no-contact order establishes Melland was "present . . . in open court" when the order was issued. Melland signed the no-contact order on April 4, 2016 at "4:01 pm" and "acknowledged receipt of a copy of this order." The certified copy of the SMC domestic violence no-contact order was in effect until "4/4/2018." The uncontroverted testimony established the SMC no-contact order prohibiting Melland from contacting D.J. was the only no-contact order in effect in 2016. Detective Page testified the name and date of birth on the no-contact order matched the identifying information on the certified copy of Melland's driver's license.

The undisputed evidence showed Officer Stewart responded to a June 10, 2016 domestic violence 911 call and interviewed D.J. on June 11, 2016. Officer Stewart took photographs of the injuries to D.J.'s right hand and fingers. The police verified there was an SMC no-contact order in effect that prohibited Melland from having contact with D.J.

When admitted to Virginia Mason on June 26, 2016, D.J. was wearing a "poorly applied nonmedical splint" on her right pinky finger. Dr. Frank noted her alcohol use " 'has been progressive, more recently drinking one-fifth of hard alcohol daily. She was a bartender for years and feels this fueled her abuse. . . . She has also been drinking to deal with the stress of a long-term abusive relationship.' " Dr. Frank testified the "15

13

days" between the date D.J. stated her boyfriend broke her finger and the date she arrived at the hospital was consistent with the injury.

> I think because she had a very ineffective splint on her hand which was allowing excessive movement, I thought the date which was 15 days, I guess, before I saw her seemed quite compatible with the picture I was seeing with some bruising, and swelling, and tenderness to touch.

Dr. Memon testified that on July 14, " 'Patient reports that boyfriend of six years has abused her in the past and [is] responsible for breaking her finger.' " Social worker Moore testified that in mid-July, D.J. said her "ex-boyfriend with DV history" was "violating a protection order that prevents him from being near her."

Viewing the evidence in the light most favorable to the State, sufficient evidence supports the jury finding Melland was the boyfriend who committed the crimes of domestic violence assault of D.J. on June 10, 2016 and misdemeanor violation of the April 4, 2016 SMC no-contact order.

Reckless Infliction of Substantial Bodily Harm

In the alternative, Melland contends sufficient evidence does not support the jury finding he committed assault in the second degree in violation of RCW 9A.36.021(1)(a). Melland asserts the State did not prove beyond a reasonable doubt the essential mens rea element that he recklessly inflicted substantial bodily harm. We agree.

A person is guilty of assault in the second degree if he "[i]ntentionally assaults another and thereby recklessly inflicts substantial bodily harm." RCW 9A.36.021(1)(a). To convict Melland of assault in the second degree, the State has the burden of proving beyond a reasonable doubt that Melland "recklessly inflicted substantial bodily harm on [D.J.]." The State must prove "an intentional assault, which thereby recklessly inflicts

14

substantial bodily harm." State v. R.H.S., 94 Wn. App. 844, 846, 974 P.2d 1253 (1999) (citing RCW 9A.36.021(1)(a)).

RCW 9A.08.010(1)(c) defines "recklessness" as follows:

A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and his or her disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation.

There is both a subjective and an objective component to the mens rea of "recklessness." Rich, 184 Wn.2d at 904. Whether sufficient evidence supports finding a defendant acted recklessly " 'depends on both what the defendant knew and how a reasonable person would have acted knowing these facts.' " State v. Graham, 153 Wn.2d 400, 408, 103 P.3d 1238 (2005) (quoting R.H.S., 94 Wn. App. at 847); Rich, 184 Wn.2d at 904. "The trier of fact is permitted to find actual subjective knowledge if there is sufficient information that would lead a reasonable person to believe that a fact exists." R.H.S., 94 Wn. App. at 847; see RCW 9A.08.010(1)(b) (defining "knowledge"); see also State v. Johnson, 119 Wn.2d 167, 174, 829 P.2d 1082 (1992) ("The jury is permitted to find actual subjective knowledge if there is sufficient information which would lead a reasonable person to believe that a fact exists."[3]).

Viewing the evidence and all reasonable inferences in the light most favorable to the State, the evidence showed Melland fractured D.J.'s finger. But nothing in the record shows what Melland knew of or that he disregarded a substantial risk that a wrongful act may occur. The only evidence that describes the assault is from a Virginia Mason medical record that states, " 'During domestic dispute with boyfriend, he grabbed

---

[3] Emphasis omitted.

15

the[ ] phone from patient's hand which hurt her finger. Found in ED[4] to be nondisplaced fracture.' " The evidence does not support finding that Melland knew of and disregarded a substantial risk that he would fracture D.J.'s finger when he grabbed the phone from her hand.

Contrary to the repeated assertions of the prosecutor in opening statement and closing argument, there was no evidence that Melland "grabbed her right hand so hard, squeezed, and twisted it that the bone broke" or that Melland grabbed D.J.'s hand "really hard and twist[ed] it and turned it so hard that it breaks."

The State argues the severity of the injury to D.J.'s finger shows Melland acted recklessly. The State's argument ignores the mens rea of recklessness. Evidence of the seriousness of the injury supports finding the infliction of substantial harm on D.J. but does not support finding that Melland "acted recklessly in inflicting those injuries." State v. Hayward, 152 Wn. App. 632, 648, 217 P.3d 354 (2009).

We conclude no reasonable trier of fact could find beyond a reasonable doubt that Melland disregarded a substantial risk that a wrongful act may occur and recklessly inflicted substantial bodily harm. Where sufficient evidence does not support a conviction, such a conviction "cannot constitutionally stand." Jackson, 443 U.S. at 317-18. Reversal for insufficient evidence is "equivalent to an acquittal" and bars retrial for the same offense. State v. Wright, 165 Wn.2d 783, 792, 203 P.3d 1027 (2009); see also Burks v. United States, 437 U.S. 1, 11, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978) ("The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding."); U.S. CONST. amend. V; WASH. CONST. art. I, § 9. Because sufficient

---

[4] Emergency department.

16

evidence does not support the essential element of recklessness, we reverse the assault in the second degree conviction.

Right to Confrontation

Melland seeks reversal of the misdemeanor violation of a no-contact order conviction on the ground that police officer testimony violated his right to confrontation.[5]

We review an alleged violation of the confrontation clause de novo. State v. Jasper, 174 Wn.2d 96, 108, 271 P.3d 876 (2012) (citing Lilly v. Virginia, 527 U.S. 116, 137, 119 S. Ct. 1887, 144 L. Ed. 2d 117 (1999)). The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

The confrontation clause applies to witnesses against the accused; in other words, those who " 'bear testimony.' " Crawford v. Washington, 541 U.S. 36, 51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) (quoting 2 NOAH WEBSTER, AN AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE (1828)). The confrontation clause bars the admission of testimonial hearsay statements where the declarant does not testify at trial and the defendant had no prior opportunity to confront the witness under oath. Crawford, 541 U.S. at 53-54; Melendez-Diaz v. Massachusetts, 557 U.S. 305, 311, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009).

Melland contends the admission of testimonial hearsay violated his right to confrontation.

---

[5] A defendant must assert violation of the right to confrontation at trial or the right is waived. State v. Burns, 193 Wn.2d 190, 206-07, 438 P.3d 1183 (2019); accord Melendez-Diaz v. Massachusetts, 557 U.S. 305, 311, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009). We conclude Melland sufficiently preserved the right to confrontation claim. The constitutional ground is apparent from his objection to the admission of Officer Stewart's testimony.

In Crawford, the United States Supreme Court held that the admission of testimonial statements by a nontestifying witness without a prior opportunity for cross-examination violates the defendant's right to confrontation under the Sixth Amendment. 541 U.S. at 68. While the Court did not provide a "precise articulation" or comprehensive definition of "testimonial hearsay" for purposes of the confrontation clause, the Court defined "testimony" as " '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " Crawford, 541 U.S. at 51-52[6] (quoting AN AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE). The Court states the term "testimonial" "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Crawford, 541 U.S. at 68. The Court held the statements of an unavailable witness made while in custody at the police station in response to police questioning were testimonial and improperly admitted. Crawford, 541 U.S. at 68.

In Davis v. Washington, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006), the Court distinguished statements made in a 911 call from the interrogation at the police station in Crawford. The Court held:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Davis, 547 U.S. at 822. The Court concluded the statements a domestic violence victim made to a 911 operator were not testimonial. Davis, 547 U.S. at 828.

---

[6] Alteration in original.

18

In <u>Michigan v. Bryant</u>, 562 U.S. 344, 360, 131 S. Ct. 1143, 179 L. Ed. 2d 93 (2011), the Court clarified the "primary purpose" test:

> [T]he relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals, statements and actions and the circumstances in which the encounter occurred.

When "the primary purpose of an interrogation is to respond to an 'ongoing emergency,'" its purpose is not to create a record for trial and thus is not within the scope of the [Confrontation] Clause." <u>Bryant</u>, 562 U.S. at 358. However, the Court states, "[T]he existence vel non of an ongoing emergency is not the touchstone of the testimonial inquiry." <u>Bryant</u>, 562 U.S. at 374. Instead, "whether an ongoing emergency exists is simply one factor—albeit an important factor—that informs the ultimate inquiry regarding the 'primary purpose' of an interrogation." <u>Bryant</u>, 562 U.S. at 366.

Melland contends the testimony of Officer Stewart violated his right to confront and cross-examine the victim who did not testify. We "determine the primary purpose of a police interrogation" by " 'objectively' " evaluating " 'the circumstances in which the encounter occurs and the statements and actions of the parties.' " <u>State v. Scanlan</u>, No. 95971-4, slip op. at 11 (Wash. Aug. 1, 2019), http://www.courts.wa.gov/opinions/pdf/959714.pdf (quoting <u>Bryant</u>, 562 U.S. at 359).

Before Officer Stewart testified, Melland moved to preclude Officer Stewart from testifying "that he directed officers to contact Tristan Melland." In response, the prosecutor argued:

> All I'm doing is asking the officer, what did you do? What are the things that you did when you were making your response, and responsible for the initial investigation? One of those things was to look at the no-contact order, it listed Tristan Melland, he asked officers to go contact him.

The court denied the motion "to exclude the reference to directing that Mr. Melland be contacted."

At trial, Officer Stewart testified that on June 11, 2016, he responded to a 911 call "to investigate a domestic violence assault incident and possible violation of a no-contact order." In response to the question, "Did you ask her how the injury happened," Officer Stewart answered, "Yes." In response to the question, "Did you ask her who caused the injury," Officer Stewart answered, "Yes." Officer Stewart testified that he checked the police database and "[t]here was a valid and served no-contact order that's in the system, which is WASIC[7] and NCIC[8]." "[T]he protected person of that court order — and it was a no-contact order — was [D.J.]" and "the respondent or the person that is supposed to stay away from the petitioner, the protected person, was a . . . Tristan Melland." Officer Stewart testified that after determining there was a recorded no-contact order, he directed officers to contact Melland:

> Q    Okay. All right. So now, let's get back to your conversation with [D.J.] and what were you doing when you respond to this call. After you looked up this no-contact order, did you make any efforts to contact Mr. Melland?
> A    I did.
> Q    And do you know whether any other officers contacted Mr. Melland?
> A    I do; and they did.

We conclude the circumstances, statements, and actions of the parties show the testimony of Officer Stewart did not violate the confrontation clause. The uncontroverted record establishes Officer Stewart was responding to a 911 call reporting a domestic violence assault and possible violation of a no-contact order.

---

[7] Washington State Criminal Information Center.

[8] National Crime Information Center.

Officer Stewart met D.J. outside her Queen Anne apartment building. D.J. "was visibly shaking, crying, and she was holding her hand complaining of an injury." Officer Stewart examined the injury to her hand and took photographs. Officer Stewart did not testify about the statements made by D.J. or any other person. The primary purpose of asking D.J. how the injury happened and who caused the injury was to assess the situation, protect the safety of D.J., and determine whether there was a no-contact order that prohibited contact with D.J.[9]

But even if the testimony violated the confrontation clause, we conclude beyond a reasonable doubt that the jury would have reached the same result in the absence of the error. Confrontation clause violations are subject to a harmless error analysis. State v. Fisher, 185 Wn.2d 836, 847, 374 P.3d 1185 (2016). A constitutional error is harmless if the appellate court is "persuaded beyond a reasonable doubt that the jury would have reached the same result in absence of the error." Fisher, 185 Wn.2d 847. Constitutional error is presumed prejudicial. State v. Guloy, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985). "The test is whether the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt." Fisher, 185 Wn.2d 847.

The overwhelming untainted evidence supports the jury finding Melland guilty of misdemeanor violation of the SMC no-contact order. The undisputed evidence established the court entered a domestic violence no-contact order on April 4, 2016. The order prohibits Melland from having any contact with D.J. The order was in effect

---

[9] The 1991 case Melland cites, State v. Johnson, 61 Wn. App. 539, 811 P.2d 687, predates evolution of the confrontation clause jurisprudence and is distinguishable. In Johnson, the court allowed a police officer to testify that based on statements in the affidavit of a confidential informant, the officer "had reason to suspect" the defendant was involved in drug trafficking. Johnson, 61 Wn. App. at 546. The court held the improper inference from the testimony was that the affidavit provided evidence of guilt. Johnson, 61 Wn. App. at 547. Unlike in Johnson, Officer Stewart made no reference to what D.J. said in response to the questions he asked.

until April 4, 2018. Melland was present in court on April 4, 2016. He signed and acknowledged receipt of the order. Detective Page testified that the identifying information in the no-contact order matched the information in the certified copy of Melland's driver's license. The uncontroverted testimony establishes D.J. called 911 on June 10, 2016 to report a domestic violence assault and violation of a protection order. When admitted to the hospital on June 26, D.J. told Dr. Frank that during a " 'domestic dispute with boyfriend, he grabbed the[ ] phone from patient's hand which hurt her finger.' " When admitted to the hospital on July 14, D.J. told Dr. Memon her " 'boyfriend of six years has abused her in the past and is responsible for breaking her finger.' " D.J. also told social worker Moore that her "ex-boyfriend with DV history" violated "a protection order that prevents him from being near her." We conclude any confrontation clause error was harmless beyond a reasonable doubt.

Sufficiency of Charging Document

For the first time on appeal, Melland claims he is entitled to dismissal without prejudice of the jury conviction on the lesser included offense of misdemeanor violation of the SMC no-contact order because the information omitted an essential element of the crime of felony violation of a court order in violation of RCW 26.50.110(4).

We review the adequacy of a charging document de novo. State v. Johnson, 180 Wn.2d 295, 300, 325 P.3d 135 (2014). "In criminal cases, the accused has the constitutional right to know the charges against them." Johnson, 180 Wn.2d at 300 (citing U.S. CONST. amend. VI; WASH. CONST. art. I, § 22). Under the Sixth Amendment and article I, section 22 of the Washington State Constitution, "[a]ll essential elements of a crime, statutory or otherwise, must be included in a charging document in order to

afford notice to an accused of the nature and cause of the accusation against him." State v. Kjorsvik, 117 Wn.2d 93, 97, 812 P.2d 86 (1991). "The information is constitutionally sufficient 'only if all essential elements of a crime, statutory and nonstatutory, are included in the document.' " Johnson, 180 Wn.2d at 300 (quoting State v. Vangerpen, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995)). Essential elements include facts that must be proved beyond a reasonable doubt to convict a defendant of the charged crime. State v. Zillyette, 178 Wn.2d 153, 158, 307 P.3d 712 (2013).

" 'An essential element is one whose specification is necessary to establish the very illegality of the behavior charged.' " Zillyette, 178 Wn.2d at 158[10] (quoting State v. Ward, 148 Wn.2d 803, 811, 64 P.3d 640 (2003)); Johnson, 180 Wn.2d at 300. "This essential elements rule exists 'to apprise the accused of the charges against him or her and to allow the defendant to prepare a defense.' " Johnson, 180 Wn.2d at 300 (quoting Vangerpen, 125 Wn.2d at 787). "If the State fails to allege every essential element, then the information is insufficient and the charge must be dismissed without prejudice." Johnson, 180 Wn.2d at 300-01 (citing State v. Nonog, 169 Wn.2d 220, 226 n.3, 237 P.3d 250 (2010)).

The amended information charged Melland with assault in the second degree and felony violation of a court order. The amended information states, in pertinent part:

Count 1  Domestic Violence Felony Violation Of A Court Order

That the defendant Tristan James Melland in King County, Washington, on or about June 10, 2016, did know of and willfully violate the terms of a court order issued on April 4, 2016 by the Seattle Municipal Court . . . pursuant to RCW chapter 10.99, for the protection of [D.J.], by (a) intentionally assaulting the said [D.J.]; or (b) conduct which was reckless and created substantial risk of death or serious physical injury to [D.J.];

---

[10] Internal quotation marks omitted.

Contrary to RCW 26.50.110(1), (4), and against the peace and dignity of the State of Washington.[11]

The amended information charging Melland with felony violation of a no-contact order does not inform Melland that the assault "does not amount to assault in the first or second degree." RCW 26.50.110(4).

RCW 26.50.110(1)(a) states a party is guilty of misdemeanor violation of a protection order if (1) there is an order, (2) the person to be restrained knows of the order, and (3) the person violates the order. RCW 26.50.110(1)(a) provides, in pertinent part:

> Whenever an order [for protection] is granted . . . and the respondent or person to be restrained knows of the order, a violation of any of the following provisions of the order is a gross misdemeanor, except as provided in subsections (4) and (5) of this section:
> (i) The restraint provisions prohibiting acts or threats of violence against, or stalking of, a protected party, or restraint provisions prohibiting contact with a protected party;
> (ii) A provision excluding the person from a residence, workplace, school, or day care;
> (iii) A provision prohibiting a person from knowingly coming within, or knowingly remaining within, a specified distance of a location.

RCW 26.50.110(4) elevates violation of a no-contact order from a gross misdemeanor to a felony. RCW 26.50.110(4) states, in pertinent part:

> Any assault that is a violation of an order [for protection] . . . that does not amount to assault in the first or second degree under RCW 9A.36.011 or 9A.36.021 is a class C felony, and any conduct in violation of such an order that is reckless and creates a substantial risk of death or serious physical injury to another person is a class C felony.[12]

In Ward, the court concluded that " '[t]he statute clearly states that second degree assault cannot serve as the predicate to make the violation a felony.' " Ward, 148

---

[11] Emphasis added.
[12] Emphasis added.

24

Wn.2d at 812[13] (quoting State v. Azpitarte, 140 Wn.2d 138, 141, 995 P.2d 31 (2000)). The court held that an information alleging felony violation of a no-contact order must state an assault that is in violation of a no-contact order " 'does not amount to assault in the first or second degree' " only if the State also charges a defendant with first or second degree assault. Ward, 148 Wn.2d at 813-14 (quoting RCW 26.50.110(4)).

"It is an 'ancient doctrine' that a criminal defendant may be held to answer for only those offenses contained in the indictment or information." State v. Fernandez-Medina, 141 Wn.2d 448, 453, 6 P.3d 1150 (2000) (quoting Schmuck v. United States, 489 U.S. 705, 717-18, 109 S. Ct. 1443, 103 L. Ed. 2d 734 (1989)); see also State v. Irizarry, 111 Wn.2d 591, 592, 763 P.2d 432 (1988). The Sixth Amendment and article I, section 22 of the Washington Constitution "preserve[ ] a defendant's 'right to be informed of the charges against him and to be tried only for offenses charged.' " Fernandez-Medina, 141 Wn.2d at 453 (quoting State v. Peterson, 133 Wn.2d 885, 889, 948 P.2d 381 (1997)). However, it is well established that "under RCW 10.61.006, a defendant can be convicted of an offense that is a lesser included offense of the crime charged, without being separately charged." Fernandez-Medina, 141 Wn.2d at 453-54. RCW 10.61.006 states, "In all other cases the defendant may be found guilty of an offense the commission of which is necessarily included within that with which he or she is charged in the indictment or information."

The plain and unambiguous language of RCW 26.50.110 establishes misdemeanor violation of a no-contact order is a lesser included offense of felony violation of a no-contact order. RCW 26.50.110(1)(a) (violation of a no-contact order "is a gross misdemeanor, except as provided in subsections (4) and (5) of this section").

---

[13] Alteration in original.

Here, the amended information unequivocally contains the essential elements of the lesser included offense of domestic violence misdemeanor violation of a no-contact order in violation of RCW 26.50.110(1)(a).

We affirm the jury conviction of domestic violence misdemeanor violation of a no-contact order, reverse the conviction of domestic violence assault in the second degree, and remand to dismiss the assault conviction.

Schindler, J.

WE CONCUR:

Andrus, J.                    Dwyer, J.